JOURNAL ENTRY AND OPINION
{¶ 1} The defendant-appellant, Tayron Suarez("defendant"), appeals his convictions for domestic violence and aggravated assault. For the reasons that follow, we affirm.
 {¶ 2} On March 8, 2001, the defendant was indicted by the Cuyahoga County Grand Jury in a two-count indictment for domestic violence[1]
and felonious assault.[2] The defendant waived his right to a jury trial and a bench trial commenced on May 17, 2001. The trial court found the defendant guilty as charged in the indictment of domestic violence and guilty of aggravated assault,[3] a lesser included offense of felonious assault. On June 14, 2001, the trial court imposed its sentence on defendant to a community control sanction of two years on count one to be completed after serving the term of imprisonment of nine months on count two.
 {¶ 3} This case arose out of a domestic dispute on January 21, 2001, at the home of Heida Gonzalez ("Gonzalez") in Cleveland, Ohio. The record reveals that the defendant is the father of the youngest of Gonzalez's three children and that he was visiting his daughter at Gonzalez's home at the time of the incident.
 {¶ 4} The State presented the testimony of Cleveland Police Officer Vincent Mason. Mason testified that he and Officer William Slupo responded to Gonzalez's home on a domestic violence call. Mason testified that when he arrived, Gonzalez was cowering, sobbing heavily and was shaking. The kitchen and dining room were in disarray with dishes and chairs lying about the floor. Mason testified that Gonzalez had a lump on the side of her head, scratch marks on her arm and that she reported a bruised back where the defendant had kicked her. Gonzalez related that she argued with the defendant and wanted him to leave the residence. The defendant took the phone away from her and struck her with it about the head and face. She stated that the defendant pushed her down and kicked her in the back. Gonzalez informed him that the defendant hit her, put a knife to her throat and threatened to kill her. She then identified the kitchen knife for Officer Mason. She stated that her brother arrived at the home during this altercation and that the defendant then attacked her brother as well.
 {¶ 5} Based on Gonzalez's statements, Officer Mason believed the defendant was the primary aggressor in the domestic violence situation. The defendant, who had fled the scene on foot rather than taking his running vehicle, was later apprehended and placed under arrest by Officer William Slupo.
 {¶ 6} At trial, Gonzalez changed her story and testified that she lied to the police so that "the worst would happen" to the defendant. Gonzalez testified that she and the defendant began arguing because she suspected that he was seeing another woman. The defendant left the residence, entered and started his vehicle, but returned to collect a video game, when Gonzalez struck the defendant in the face with a cordless phone. Gonzalez stated that she continued to strike him about the head and shoulders. Gonzalez testified that the defendant attempted to pin her arms and told her to "stay still" and that she was "out of control." Gonzalez stated that she could not control herself and that he continued to hold her hands and tell her to "stop." Gonzalez testified that the defendant threw her to the floor, where she hit her ear, and that he pinned her there. Gonzalez testified that the defendant was trying to hold her only to prevent her from further attacking him. Gonzalez denied her earlier account that the defendant had threatened her with the kitchen knife. Gonzalez stated that she threw a dish rack containing silverware and assorted dishes at the defendant. At this time, Gonzalez's brother arrived who, seeing his sister in tears, assumed the worst and began fighting with the defendant. Gonzalez then called the police.
 {¶ 7} The State argued that Gonzalez suffered from domestic violence syndrome and that she testified to a different story of the events in order to protect the defendant. Gonzalez testified that she cared about the defendant as her baby's father and that she did not want anything to happen to hiThe defendant took the stand in his own defense and testified that he had been convicted of a prior domestic violence offense against his older sister.
 {¶ 8} The defendant testified that he had given Gonzalez "permission" to go to the mall and that he was on the phone with his mother, when Gonzalez became upset. The defendant's rendition of the events is that the argument began because he did not give her the phone to speak with her sister, who had called while he was speaking to his mother. The argument escalated, and Gonzalez accused him of seeing another woman. The defendant testified that Gonzalez struck him with the phone and they "started fighting." The defendant testified that he might have thrown her against a refrigerator and slammed her to the floor, "just to get her off" of him. He testified that he began picking up the silverware and dishes that Gonzalez threw at him when her brother arrived and began fighting with him. The defendant denied ever threatening Gonzalez with a knife.
 {¶ 9} The defendant submits two assignments of error for our review:
 {¶ 10} "I. There was insufficient evidence to sustain the appellant's convictions and thus, he has been denied his right to due process of law as guaranteed by the constitutions of the United States and of Ohio."
 {¶ 11} Within this assignment of error, the defendant challenges the sufficiency of the evidence supporting his conviction. The defendant argues that any physical contact that he had with the victim was either initiated by her or the result of his attempts to defend himself from her attack. He claims that the evidence presented is inadequate to support his convictions.
 {¶ 12} When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. Thus, a reviewing court will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh
(2001), 90 Ohio St.3d 460, 484.
 {¶ 13} R.C. 2919.25(A) provides as follows:
 {¶ 14} "§ 2919.25 Domestic Violence.
 {¶ 15} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 16} R.C. 2903.12(A)(1) provides as follows:
 {¶ 17} "§ 2903.12 Aggravated assault.
 {¶ 18} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 {¶ 19} "(1) Cause serious physical harm to another or to another's unborn;"
 {¶ 20} In order to convict the defendant the trial court must have determined that he knowingly caused or attempted to cause physical harm to Gonzalez. Despite the conflict between the statements that Gonzalez gave to the police at the time of the incident and her testimony at trial, there is no question that a fight ensued between Gonzalez and the defendant. The defendant admitted that he "threw her against the refrigerator" and "slammed her to the floor."
 {¶ 21} Gonzalez informed the police that the defendant struck her and placed a knife against her throat and threatened to kill her. At trial, Gonzalez's depiction of the events changed and she stated that she had given a false police report. However, the State argues that when Gonzalez's statements were made to the police they were fresh in her mind and that it is typical for a victim of domestic violence to change her story later in order to protect the offender. Indeed, the record reveals that Gonzalez visited the defendant in jail and admitted on the stand that she still cared for the defendant and did not want anything to happen to the father of her child.
 {¶ 22} When the facts are viewed in the light most favorable to the prosecution, reasonable minds could have reached the conclusion that the defendant committed the offenses of domestic violence and aggravated assault. Thus, we find that the defendant's convictions are supported by sufficient evidence and the defendant's first assignment of error is overruled.
 {¶ 23} "II. The appellant's convictions are against the manifest weight of the evidence and thus, he has been denied due process of law as guaranteed by the constitutions of the United States and of Ohio."
 {¶ 24} In his second assignment of error, the defendant claims that his convictions for domestic violence and aggravated assault are against the manifest weight of the evidence. We disagree.
 {¶ 25} In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, citingTibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison (1985), 23 Ohio App.3d 10.
 {¶ 26} Where a judgment is supported by competent and credible evidence going to all the essential elements of the case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; see also, State v. Smith (2000), 87 Ohio St.3d 424,2000-Ohio-450.
 {¶ 27} The defendant relies on Gonzalez's repudiation of her prior statements to the police and her in-court admission that these statements were untruthful. It is true that Gonzalez's testimony changed dramatically from the statements she provided to the police. At the time of the incident, Gonzalez stated that she was threatened with a knife, hit and kicked. However, at trial, Gonzalez testified that she initiated the violence and continued to attack the defendant until her brother arrived, who took up where she left off. It is the trial court's function to primarily determine the weight and credibility to provide each witness's testimony. The trial court also heard the testimony of Officer Mason, who stated that when he arrived on the scene Gonzalez was visibly shaken, sobbing heavily, and scared. The kitchen was in disarray and she had a lump on her head, scratch marks on her arm and reported injury to her back. Gonzalez informed the officer that the argument began regarding the defendant "not doing anything around the house." She related to the officer that she told him she wanted to evict him and he became angry and took the phone from her hand. The defendant then attacked her, struck her on the head and face, pushed her in the stomach and kicked her in the back.
 {¶ 28} After reviewing the testimony of the witnesses, we do not find that the trial court lost its way and created a manifest miscarriage of justice when it resolved the conflicting evidence. There is competent and credible evidence in support of the essential elements of domestic violence and aggravated assault. The defendant's second assignment of error is without merit.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO P.J. and DIANE KARPINSKI, J., concur.
N.B. This entry is an announcement of the court's decision. See App.R.22(B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).
[1] R.C. 2919.25.
[2] R.C. 2903.11.
[3] R.C. 2903.12.